# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### June 10, 2015 Session

## HANNA (JOHN) NAZI, ET AL. v. JERRY'S OIL COMPANY INC.

### Appeal from the Circuit Court for Madison County
#### No. C12289     Nathan B. Pride, Judge

_____

### No. W2014-02008-COA-R3-CV – June 24, 2015
_____

The trial court determined that Appellant Hanna (John) Nazi executed the contractual documents between the parties as the owner/proprietor of the Handy Peddler and that he was liable for a judgment in favor of Appellee Jerry's Oil Company, Inc. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Robert T. Keeton, III, Huntingdon, Tennessee, for the appellant, Hanna (John) Nazi and Banham (Ben) Nazi.

Adam C. Crider and Brandon J. Stout, Jackson, Tennessee, for the appellee, Jerry's Oil Company, Inc.

## MEMORANDUM OPINION[1]

This is the second appeal in this contract dispute. The background facts and procedural history were set-forth comprehensively in *Nazi v. Jerry's Oil Company, Inc.*, No. W2013–02638–COA–R3–CV, 2014 WL 3555984 (Tenn. Ct. App. July 18, 2014) ("*Nazi I*"), and it is unnecessary to repeat them in detail here. In *Nazi I*, we vacated the trial court's order dismissing Hanna (John) Nazi ("John Nazi") following a bench trial of

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:
This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

a June 2012 breach of contract claim filed by Jerry's Oil, Inc., ("Jerry's Oil") against John Nazi and his brother, Banham (Ben) Nazi ("Ben Nazi").[2] We determined that the documents forming the parties' agreement were ambiguous with respect to whether John Nazi was acting as the owner/proprietor of the Handy Peddler, a sole proprietorship, when he executed the purchase contract, security agreement, fuel supply agreement, and promissory note that, together, formed the agreement between Jerry's Oil and the Handy Peddler. *Nazi I*, 2014 3555984, at \*12. We observed that, although it was undisputed that John Nazi executed the documents under which Jerry's Oil supplied fuel to the Handy Peddler, the parties disputed whether John Nazi signed the documents "merely as its manager," acting on behalf of Ben Nazi – who John Nazi asserts is, in fact, the proprietor of the Handy Peddler – or whether he was acting as its owner/proprietor. *Id*. We noted that the trial court made no findings with respect to the intent of the parties when the documents were executed in 2007, but "simply determined that John Nazi could not be liable because he was no longer involved with the Handy Peddler at the time the breaches occurred, which was an improper basis for the involuntary dismissal." *Id*. We determined that the evidence was contested and that resolution of the issue turned on a determination of facts. *Id*. Accordingly, we remanded the matter to the trial court for further consideration and to make findings of fact. *Id*.

On remand, the trial court heard arguments in the matter in August 2014. Upon consideration of the parties' arguments and review of the documents and the transcripts of the 2013 bench trial, the trial court entered judgment on September 10, 2014. The trial court determined that the testimony of the witnesses did not clarify the issue. The trial court found that, in light of the language of the documents executed by John Nazi and in view of the parties' course of dealing, John Nazi was the proprietor of the Handy Peddler when the agreement with Jerry's Oil was executed. Accordingly, it held John Nazi liable for the judgment in favor of Jerry's Oil. John Nazi filed a timely notice of appeal.

## Discussion

The sole question for review is whether the trial court erred by determining that John Nazi was acting as the proprietor of the Handy Peddler when he executed the four documents comprising the agreement between Jerry's Oil and the Handy Peddler. We review the findings of fact by a trial court sitting without a jury *de novo* upon the record, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *e.g., Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 515 (Tenn. 2012).

---

[2]Jerry's Oil filed its original complaint against John Nazi. John Nazi asserted that he was acting as a representative of the Handy Peddler when he executed the contract with Jerry's Oil and that the Handy Peddler was in fact owned by Ben Nazi. Ben Nazi was joined as a Defendant in *Nazi I*; John Nazi was involuntarily dismissed by the trial court; and the trial court entered a judgment in favor of Jerry's Oil against Ben Nazi in the amount of $99,875.71. On remand, the trial court entered the judgment against John Nazi, and John Nazi is the only Appellant in the current appeal.

Where the trial court's factual findings are based on its assessment of credibility of the witnesses, we will not reverse those findings unless there is clear and convincing evidence to the contrary. *E.g., In Re: M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *E.g., Rogers v. Louisville Land Co*., 367 S.W.3d 196, 204 (Tenn. 2012).

The four documents executed by John Nazi on behalf of the Handy Peddler in 2007 include a Purchase Contract, a Security Agreement, a Fuel Supply Agreement, and a Promissory Note. Ben Nazi did not sign any of the documents. The Fuel Supply Agreement defined Handy Peddler as the "Retailer." John Nazi signed the Agreement, but left the space designated for "Title" blank. The Agreement recited a term of 120 consecutive months with automatic renewal on a month-to-month basis until terminated with 30 days' notice. Paragraph 14 of the Agreement provided:

> This Agreement shall not be transferred or assigned by Retailer in whole or in part, directly or indirectly, without the prior written consent of Supplier. Any granted request to assign may require that Retailer remain obligated to Supplier according to the terms of this Agreement. Supplier may assign this Agreement in whole or in part.

Paragraph 17 provided that notice required under the Agreement would be provided in writing to "Handy Peddler c/o John Nazi[.]" It further stated that a copy of any notice would be sent to "Handy Peddler C/O John Nazi[.]" We observe that the paragraph provided for notice to Jerry's Oil, with a copy to its legal counsel. Paragraph 32 of the Agreement provided that it constituted the entirety of the parties' agreement and further provided that it could not be modified except in a writing signed by the parties.

The Purchase Contract was signed by John Nazi as "Buyer's Representative Handy Peddler." The Promissory Note identified "John Nazi doing business as Handy Peddler (maker)" and was signed by John Nazi without any designation of title. John Nazi executed the Security Agreement as "Manager," and we observe that Jerry's Oil recited John Nazi as the "exact full legal name" of the debtor on its UCC Financing Statement.[3]

The record also contains correspondence dated March 24, 2007, and signed by John Nazi on behalf of the Handy Peddler. The correspondence states:

> I am John Nazi owner of the Handy Peddler B.P. in Camden Tn. I am advising you at this time, I wish to discontinue with my present supplier (Jobber) Reynolds Br. I hold no contractual agreement nor do I have any indebtedness with them. I wish to have Jerry's Oil out of Jackson Tn

---

[3] The UCC Financing Statement supplied John Nazi's legal name: Hanna E. Nazi.

become my supplier. I would like to start transferring my Credit Cards over to Jerry's Oil when possible.

The record additionally contains a document relating to past-due fuel invoices. The document was signed by a representative for Jerry's Oil and "Handy Peddler John Nazi."

In its September 2014 order, the trial court found that John Nazi was a proprietor of the Handy Peddler when the documents were executed in 2007. The trial court further found that John Nazi had actual authority to contract on behalf of the Handy Peddler; that no proof was offered to demonstrate any business relationship between John Nazi and Ben Nazi; that no proof was offered to indicate an employer-employee relationship between Ben Nazi and John Nazi; and that there was no proof that Ben Nazi was unavailable to execute the documents in 2007. It also found that John Nazi left the management and operation of the Handy Peddler in 2011 and 2012, when the breaches occurred, but that the contract with Jerry's Oil was not modified or amended. The trial court stated, "It appears that the intent of the parties was for the contracts to continue until they expired or were modified." The trial court concluded:

> With exception of the Security Agreement, all other documents are silent as to the relationship as manager of Handy Peddler and preponderates toward the contractual liability of John Nazi, to the documents. There is no ambiguity in them, so the Court can only use the plain meaning of the contracts, documents and terms which indicate John Nazi was a proprietor of the Handy Peddler.

Courts must seek to ascertain and effectuate the intent of the parties at the time they executed their agreement. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). In cases where a contract is ambiguous, the meaning of its terms "'becomes a question of fact[.]'" *Id.* (quoting *Smith v. Seaboard Coast Line R.R. Co.*, 639 F.2d 1235, 1239 (5th Cir.1981)). In his brief, John Nazi asserts that the trial court erred where it failed to "reconcile the ambiguities created by John Nazi's signature." Upon review of the record, and the documentary evidence in particular, we cannot say that the evidence preponderates against the finding of the trial court that John Nazi executed the contractual documents as the proprietor of the Handy Peddler in 2007. When the documents were executed, John Nazi clearly held himself out as the owner of the Handy Peddler.

As we noted in *Nazi I*, "[a] sole proprietorship necessarily involves individual liability." *Nazi I*, 2014 WL 3555984, at *10 (citing *see Dexter Ridge Shopping Center, LLC v. Little*, 358 S.W.3d 597, 608 n .8 (Tenn. Ct. App.2010) (noting that because the business was a sole proprietorship, the question was whether its owner/proprietor was liable, as the business did not constitute a "separate legal entity")). We further stated in *Nazi I*:

4

The individual proprietorship or sole proprietorship—the two terms being interchangeable—is the oldest, simplest, and most prevalent form of business enterprise. Rules of contract, torts, property, and agency law loom large in its legal character.

An individual may carry on business as sole proprietor. Such assistance as is needed in the way of service may be procured by hiring others, with whom the proprietor enters into the relation of master and servant, or principal and agent.... If there are losses, the proprietor must bear them alone, to the extent of business and personal resources. If there are profits, the proprietor does not have to share them, absent any agreement to compensate employees, the landlord, or the money lender with a share of profits in lieu of fixed wages, rent, or interest.

In short, the individual proprietor is the "boss," personally employing others as employees or agents. The business contracts—those made personally or by agents within their actual or apparent authority or, when made beyond the agency power, ratified—are the proprietor's contracts.

\* \* \*

The relation of master and servant or principal and agent or employer and employee exists between the proprietor and anyone else associated with the enterprise. *The proprietor retains all the profits of the business and likewise must bear all the losses, and remains fully liable for any business debts even though the business is dissolved.*

*Id*. at \*7 (emphasis added) (quoting 14A Tenn. Prac., Legal Forms Business Organizations § 12:1). A sole proprietorship has no legal existence separate from its owner. *See Wilson v. Acacia Dermatology PLLC*, *et al*, No. 1:11-CV-00069, 2011 WL 3651779 (M.D. Tenn. Aug. 18, 2011). Accordingly, we affirm the trial court's judgment in favor of Jerry's Oil against John Nazi.

### Holding

In light of the foregoing, the judgment of the trial court is affirmed. Costs on appeal are taxed to the Appellant, Hanna (John) Nazi, for which execution may issue if necessary. This matter is remanded to the trial court for the collection of costs, enforcement of the judgment, and further proceedings as may be necessary and consistent with this opinion.

_____
ARNOLD B. GOLDIN, JUDGE